IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PRECISION FRANCHISING LLC,       )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   1:07cv407 (LMB/BRP)
                                 )
HENRY PATE, SR.,                 )
                                 )
    Defendant.                   )
                                 )

MEMORANDUM OPINION

Before the Court are plaintiff Precision Franchising LLC's Motion for Summary Judgment and defendant Henry Pate's Motion for Summary Judgment. For the reasons discussed during the hearing and below, the Court finds that plaintiff has neither alleged nor offered sufficient facts to support its claims of breach of contract, tortious interference, and fraudulent transfer, but that it has alleged and offered an adequate legal and evidentiary basis to proceed on its trademark infringement claims. Accordingly, the Court will deny the plaintiff's Motion for Summary Judgment and will grant the defendant's Motion for Summary Judgment in part and deny it in part.

Background

Precision Franchising LLC ("Precision") is a Virginia limited liability company that licenses automotive services businesses to operate under the "Precision Tune Auto Care" service mark and use the company's confidential methods and

procedures. It has several proprietary marks and logos registered with the Patent and Trademark Office.

Defendant Henry Pate, Sr. ("Pate"), is a resident of Alabama who formerly worked as a manager for a franchised Precision Tune Auto Care Center operated by JPAK Enterprises, Inc., an Alabama company owned by John Kelley.[1] Precision's franchise agreement with Kelley, which was set to expire on April 1, 2007, granted Precision a right of first purchase:

> Any person ("seller") who receives or desires to accept a <u>bona fide</u> offer from a third party to purchase all or part of the seller's interest in Franchisee, this Agreement, or the franchise shall notify Franchisor in writing within (5) business days of receipt of each such offer. Franchisor shall have the right and option exercisable within thirty (30) days after receipt of such written notice, to send written notice to the seller that Franchisor intends to purchase the seller's interest on the same terms and conditions offered by the third party.

Furthermore, the agreement included a non-compete provision, which prohibited Kelley, as franchisee, from having any interest in a similar business within 25 miles.

In March 2006, Pate, who was contemplating the purchase of the business from Kelley, submitted an unsolicited franchisee application to Precision's corporate headquarters in Virginia. In November or December of 2006, Precision communicated to Kelley that Pate was approved as a franchisee. <u>See</u> Pate Dep. at 31-32.

---

[1] Kelley was on active duty in the military and, according to Precision, delegated the day-to-day management and operation of the franchise to Pate.

Soon thereafter, on December 18, 2006, Kelley entered into a purchase agreement with Pate to sell him the business. The purchase agreement clearly stated that the sale was contingent upon "approval by Precision Tune Auto Care of Leesburg, Virginia, of the transfer of the franchise agreement to Purchaser," "Precision Tune Auto Care declin[ing] its 'first right of purchase,'" and Pate "obtaining suitable financing."

On January 15, 2007, Pate met with Brian King, an employee with Precision's local area developer. According to Precision, Pate communicated his intent to operate a Precision Tune Auto Care franchise by assuming the same or a substantially similar franchise agreement that Kelley had with Precision. In early January 2007, Precision also sent an offering circular to Pate which summarized the provisions of the franchise agreement. On February 1, 2007, Pate acknowledged receipt of the circular.

Precision finally sent Pate a franchise agreement on March 16, 2007, however, he refused to sign it after he discovered that the third party landlord would not allow him to continue with Kelley's lease and Precision refused to help with the lease problems. On March 28, 2007, Pate told Kelley that he would not sign the franchise agreement. By this time, Pate was in physical possession of the premise and operating the automobile business, but apparently he had not yet paid Kelley for the business. On April 24, 2007, Pate signed a Note payable to Kelley for the

purchase price of the business. There is no evidence in the record that Precision made any attempt before April 1, 2007 to take over the franchise.

On April 1, 2007, Precision's franchise agreement with Kelley expired. Pate began to operate the automobile business under the name "Henry's Auto Care." However, between April 1, 2007 and the filing of Precision's lawsuit on April 25, 2007, a "Precision Tune" sign was displayed on an outside wall of the business. It is undisputed that Pate has not sent any royalties to Precision or otherwise performed under the terms of the franchise agreement that he refused to sign. Precision alleges that it did not exercise its option to acquire Kelley's business in reliance on Pate's misrepresentations as to his intent to become a franchisee.

On April 25, 2007, Precision filed suit in this Court, alleging trademark infringement, federal unfair competition, common law service mark and trade dress infringement, fraud, fraudulent transfer, tortious interference with contract, and two claims for breach of contract. On July 6, 2007, the Court denied Pate's motion to dismiss for lack of personal jurisdiction. Thereafter, the parties filed cross-motions for summary judgment.

## Discussion

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1985). In ruling on a motion for summary judgment, a court should view the evidence in a light most favorable to the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The cross motions for summary judgment do not address Precision's claims in a parallel fashion. For ease of analysis, the Court will discuss the claims in the order they are raised in the complaint.

A. Counts I-III: Trademark Infringement, Unfair Competition, Common Law Service Mark and Trade Dress Infringement

Precision alleges that Pate used its proprietary marks and trade dress in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and common law. The thrust of these claims turns on Pate's display of a "Precision Tune" sign on the side of the building for approximately three weeks after Kelley's franchise agreement expired and Pate began to run the business.[2]

In his motion for summary judgment, Pate argues that he has not "used" the disputed mark. See generally Synergistic International, LLC v. Korman, 470 F.3d 162, 170 (4th Cir. 2006) (noting that a plaintiff must show that "the defendant's use of a colorable imitation of the trademark is likely to cause confusion

---

[2] The parties agree that there is no evidence that Pate used any other property of Precision in operating his business and they agree that the "Precision Tune" sign was displayed for about three weeks.

among consumers") (emphasis added). Pate avers that the "Precision Tune" sign was present on the property when he first occupied it and that, pursuant to his lease terms, he could not remove or alter the sign without prior consent from his landlord. It took him three weeks to secure that consent and hire a crew to paint over the sign. See Pate Dep. at 35-36.

Pate's inability to remove the sign without his landlord's consent does not mean a fortiori that he did not "use" the sign as "use" is defined under the relevant statutes. It is undisputed that, for at least three weeks, he operated an automotive services business with an unauthorized "Precision Tune" sign affixed to his building. Furthermore, even if Pate could not paint over the sign, nothing in the lease appears to have prevented him from temporarily masking or obscuring the sign with a tarp or other covering.

Given these circumstances, there is a genuine issue of material fact as to whether Pate used Precision's proprietary marks in the operation of his business. Accordingly, Pate's motion for summary judgment will be denied at to Counts I, II, and III.

B.  Count IV: Fraud

Precision alleges that Pate misrepresented his intention to sign a franchise agreement, and that it relied on those misrepresentations in deciding not to exercise its option to

purchase the business from Kelley under the original franchise agreement.

The basic elements of a claim of fraud are: "(1) a false representation, (2) of a material existing fact, (3) reasonably relied on by the claimant (4) who suffered damage as a proximate cause of the misrepresentation." Drummond Co., Inc. v. Walter Industries, Inc., 962 So2d 753, 788 (Ala. 2006); see also Cohn v. Knowledge Connections, Inc., 585 S.E.2d 578, 581 (Va. 2003) (same).[3]

As in the federal system, both Alabama and Virginia require that a plaintiff plead and prove the circumstances constituting the fraud with specificity. See Ala. R. Civ. P. 9(b); Tuscarora, Inc. v. B.V.A. Credit Corp., 241 S.E.2d 778, 783 (Va. 1978). However, the burdens of proof are different. Compare Sealing Equipment Products Co., Inc. v. Velarde, 644 So.2d 904, 909 n.4 (Ala. 1994) ("substantial evidence") with Thompson v. Bacon, 425 S.E.2d 512, 514 (Va. 1993) ("clear and convincing").

Regardless of which burden of proof applies, Precision has not put forward sufficient evidence to create a genuine issue of material fact on either the first or third element of a fraud claim.

1.  A False Representation

---

[3] Although the parties dispute whether Virginia or Alabama law applies, the dispute is irrelevant as each jurisdiction recognizes the same elements for a fraud claim.

Precision focuses on three alleged misrepresentations by Pate. First, Precision points to Pate's submission in March 2006 of a franchise application, known as "CQR," to its corporate office. In the two-page document, Pate provided his employment history, credit references, and financial status. The application did not describe or summarize any terms of the franchising relationship. It also contained the following disclaimer: "The completion of this report places no continuing obligation on either Precision Franchising LCC or its agents or the prospective franchisee." The record also contains no evidence of statements made by Pate accompanying the submission. Standing alone, the simple act of submitting the initial CQC application cannot be characterized as a representation that Pate would eventually bind himself to a franchise agreement with Precision.

Second, Precision references Pate's signature on the "franchisee" line of a document titled "Area Developer Endorsement of Franchise Transfer Application." That document, obviously one of Precision's boilerplate forms, clearly identifies Pate as an "applicant" in its header. Furthermore, by signing the document, Pate acknowledged only that he met with Brian King, Precision's local area developer, to discuss deficiencies in Pate's franchise application. Other than this acknowledgment, the document includes no other representations

about Pate's intentions. Finally, the document repeatedly uses conditional phrases like "franchisee applicant" and "subject to final approval by Precision Franchising LLC." Given the document's purpose and conditional language, the Court holds that Pate's signature cannot be characterized as a representation that Pate would later enter a franchise agreement.

Third, Precision alleges that Pate stated to Brian King on January 15, 2007, that he affirmatively intended to become a franchisee, however, the evidence submitted to support this allegation is deficient. King's declaration is vague and indefinite, briefly referencing several representations over the course of a two year period. It does not mention the January 15, 2007 date alleged in Precision's pleadings, nor does it describe the content of Pate's alleged representations with any specificity. Such a general averment hardly constitutes a scintilla of evidence to support Precision's claim that Pate misrepresented his intentions.

Finally, Precision has not put forward any evidence to rebut Pate's explanation as to why he did not consummate the franchise agreement. As revealed in Pate's deposition, some time in late 2006 or early 2006, Kelley's landlords refused to transfer the existing lease on the property to Pate because the landlords viewed Kelley and Precision as in default. <u>See</u> Pate Dep. at 58. According to Pate, Kelley and King had made previous

representations to him that the lease would be renewable. Id. at 61. Upon learning of this difficulty, Kelley and King told Pate "to get [his] own lease."[4] Id. at 61-62. Pate testified that Precision's failure to assist him in solving the lease problems soured relations, ultimately prompting his decision to not sign the franchise agreement. Id. at 97. Precision has acknowledged that it did not assist Pate with the lease, but disclaimed any requirement that it had to help Pate. See Falconi Decl. ¶ 8. This unchallenged body of evidence supports Pate's claim that he had a change of heart about the franchise and completely defeats Precision's claim that Pate intentionally misrepresented his plan to become a franchisee. On this record, Precision has not put forward sufficient evidence to create a genuine issue of material fact on whether Pate fraudulently promised to become a franchisee.

2.  Reliance

Even if Precision had produced evidence of Pate misrepresenting his intentions to Brian King in January 2007, Precision cannot demonstrate the third element of a fraud claim - that it actually and reasonably relied on those representations in declining its right of first purchase of Kelley's business.

Undisputed evidence in the record, consisting of Kelley's

---

[4] Nothing in King's declaration contradicts Pate's version of the lease problem.

deposition, shows that Precision communicated to Kelley its approval of Pate as a franchisee in November or December of 2006, before Kelley and Pate executed their purchase agreement.[5] See Kelley Dep. at 31-32. Therefore, any of Pate's representations in January 2007 were irrelevant; Precision had already declined that right one month earlier.

Furthermore, even if Precision could show actual reliance on Pate's representations, it cannot demonstrate that such reliance was reasonable. The undisputed facts demonstrate that Precision and Pate never entered into a franchising agreement. In January 2007, the parties were still in the investigation and bargaining stages. Under these facts, a reasonable company would be expected to understand that an unconsummated business relationship can sour at any moment - poor communication, a disagreement regarding material terms, personality conflicts, or a change of heart.

Given that it did not have a written agreement in hand, Precision unreasonably relied on Pate's representations of intention - all made during the investigation and bargaining stages - when it disclaimed its rights under the original franchise agreement with Kelley. Precision could have entered

---

[5] Precision has not offered any evidence that the communication took place on another date. Precision's president acknowledged that the communication occurred, but did not identify a date. See Falconi Decl. ¶ 17.

into a contractual relationship with Pate before or contemporaneously with its disclaimer of rights to Kelley in December of 2006, but instead waited until March of 2007 to present Pate with a final franchise agreement. Pate's refusal to consummate the franchise agreement on these facts does not amount to fraud. Therefore, Precision's motion for summary judgment on Count IV will be denied and Pate's motion for summary judgment will be granted.

C.   Count V: Breach of Contract (Purchase Agreement)

Precision alleges that it was a third party beneficiary of the purchase agreement between Pate and Kelley, and that Pate's failure to sign a franchise agreement violated that purchase agreement. The purchase agreement was executed in Alabama and, therefore, is governed by Alabama law. See Dreher v. Budget Rent-A-Care System, Inc., 634 S.E.2d 324, 327 (Va. 2006).

As a third party to the contract, Precision must establish standing to sue. See Dunning v. New England Life Ins. Co., 890 So.2d 92, 97 (Ala. 2003). It must show "that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental benefit upon the third party." Weathers Auto Glass, Inc., v. Alfa Mut. Ins. Co., 619 So.2d 1328, 1329 (Ala. 1993).

The disputed text of the purchase agreement reads as follows:

> CONTINGENCIES. The contract is contingent upon:
> a. Approval by Precision Tune Auto Care of Leesburg, Virginia, of the transfer of the franchise agreement to Purchaser.
> b. Precision Tune Auto Care declines its "first right of purchase."
> c. Purchaser obtaining suitable financing.

Contrary to plaintiff's argument, nothing in this text indicates an intent by Kelley and Pate to confer a direct benefit on Precision. These provisions grant no rights or privileges to Precision. Rather, the contingency language merely dispels each party's obligation to the other under the purchase agreement in the event that Precision exercised its right of first purchase.

Accordingly, Precision lacks third-party standing to sue for claimed breaches of the purchase agreement between Kelley and Pate.[6] Precision's motion for summary judgment on Count V will be denied, and Pate's motion for summary judgment will be granted.

D.   Count VI: Tortious Interference with Contract

Precision alleges Pate intentionally interfered with and prevented it from exercising its rights of first purchase and enforcing the non-compete provisions in its franchise agreement with Kelley. The claim is without merit.

Under both Alabama and Virginia law, a claim for tortious

---

[6] Moreover, even if Precision had standing to sue on this agreement, the claim would fail <u>ab initio</u> as there is absolutely no language in the agreement establishing any obligation on Pate to enter into a franchise agreement with Precision.

-13-

interference with a contract is premised on some action by the defendant that induces a third party to disregard his contractual obligations to the plaintiff. See Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590, 596 (Ala. 1986) ("[O]ne who, without justification to do so, induces a third person not to perform a contract with another, is liable to the other for the harm caused thereby.") (emphasis added); Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985) ("One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other. . . .") (emphasis added).

Precision misunderstands this rule. It asserts that Pate, through his representations, interfered with its ability to exercise its rights under the original franchise agreement. Even if true, these facts do not demonstrate tortious interference because Pate has not induced non-performance by a third party. Notably, Precision's complaint does not allege that the third party in this case - Kelley - neglected any of his obligations under the original franchising agreement.[7] For these reasons,

---

[7] Precision's argues in its pleadings that Pate enabled Kelley to violate Precision's right of first refusal. This allegation is baseless. It is undisputed that Kelley informed Precision of Pate's purchase offer. The original franchise agreement did not require anything further from Kelley unless Precision exercised its right of first purchase.

summary judgment will be granted to Pate on Count VI.

E.   Count VII: Breach of Contract (Franchise Agreement)

Precision contends that Pate, as a successor in interest, is subject to all of the obligations in the original franchise agreement and that he has breached those obligations.[8]

Under both Alabama and Virginia law, the test for whether Pate assumed Kelley's liabilities under the franchise agreement is the same.

> As a general rule, where one company sells or otherwise transfers all of its assets to another company, the transferee is not liable for the debts and liabilities of the transferor unless (1) there is an express agreement to assume the obligations of the transferor, (2) the transactions amounts to a de facto merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor.

Andrews v. John E. Smith's Sons Co., 369 So.2d 781, 785 (Ala. 1979); see also States Roofing Corp. v. Bush Const. Corp., 426 S.E.2d 124, 126-27 (Va. 1993) (same).

These circumstances are not present. Pate expressly refused to accept any of Kelley's obligations under the franchise agreement. The purchase agreement unambiguously states that "the business assets will be conveyed free and clear of all liens and

---

[8] It is worth noting that Count VI (tortious interference with contract) and Count VII (breach of franchise agreement) are mutually exclusive theories. If Pate was the successor-in-interest to Kelley and assumed his contractual obligations, there can be no tortious interference. One cannot tortiously interfere with his own contract.

encumbrances," and Pate offered consideration for the transferred assets. Moreover, there was no consolidation between the two companies as Kelley is no longer an owner. Finally, although the type of work is the same, the name of the business has changed and there is no evidence to suggest that Pate promptly assumed JPAK's accounts or completed JPAK's duties under existing contracts.

Most importantly, the successor-in-interest doctrine is employed to prevent the transferor business from fraudulently escaping outstanding debts and liabilities. Precision has not explained how Kelley, by selling the business to Pate, has circumvented any of his outstanding liabilities under the original franchise agreement.[9] It is undisputed that Precision had an opportunity to buy the business, but did not exercise its right of first purchase. Additionally, Kelley is still subject to the agreement's non-compete provisions, which Precision can enforce against him. Notably, Kelley's possession of a seven-year note reflecting the purchase price of Pate's business arguably constitutes a legal interest in Pate's automotive business in violation of the non-compete clause in Kelley's franchise agreement. Pate has done nothing to prevent Precision

---

[9] There is also no allegation in the record that Pate failed to honor Kelley's franchise agreement through its expiration on March 31, 2007. Pate's conduct in this respect is further evidence of the lack of any fraudulent conduct on his part.

from suing Kelley if Precision believes that Kelley has breached that aspect of the agreement.

Because Precision has not identified how Kelley's transfer of the business to Pate forecloses enforcement of any of its rights under the original franchise agreement, the successor-in-interest theory must fail. Summary judgment on Count VII will be granted to Pate.

F.   Count VIII: Fraudulent Transfer

In its final count, Precision claims that it was defrauded by the transfer of business assets from JPAK Enterprises to Pate in violation of the Alabama Fraudulent Transfer Act, Ala. Code § 8-9A-1, the Virginia Fraudulent Conveyance Act, Va. Code § 55-80, and the Virginia Commercial Code Bulk Sales Acts, Va. Code § 8.6A-101.

As an initial matter, Precision's attempt to plead a claim of fraudulent transfer under the Virginia statutes fails because the disputed conveyance involved the sale of an Alabama business property from one Alabama resident to another. Virginia choice-of-law rules mandate the application of Alabama law to the alleged tortious activity. See Dreher, 634 S.E.2d at 327.

To plead a fraudulent transfer claim in Alabama, Precision must have been a creditor to Pate. See Folmar & Associates LLP v. Holberg, 776 So.2d 112, 117 (Ala. 2000) ("The plain language of the statutes applies only to conveyances made by a debtor.")

(internal quotation omitted). Yet, Precision has not alleged that Pate owed it any money at the time of the conveyance. Accordingly, summary judgment will be granted to Pate on Count VIII.

## Conclusion

For the reasons stated above, the plaintiff's Motion for Summary Judgment will be DENIED and the defendant's Motion for Summary Judgment will be GRANTED with respect to Counts IV, V, VI, VII, and VIII and DENIED with respect to Counts I, II, and III.

A separate order consistent with this opinion will be entered.

Entered this 31st day of October, 2007.

/s/ _____
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia